IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HEATH LEE, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. ELH-21-1589 |
| MARK M. MEYERS, ESQ., *et al.*, | * | |
| Defendants | * | |

\*\*\*

# MEMORANDUM

Plaintiffs Heath and Marcia Lee, who are self-represented, have filed a motion entitled "Non-Judicial Temporary Restraining Order – Permanent Injunction & Demand for an Emergency Hearing Due to the Pending Title Dispute Filed in this Court." ECF 8 (the "Motion"). The Motion is supported by two exhibits. ECF 8-1; ECF 8-2. I address here the portion of the Motion in which plaintiffs request a temporary restraining order ("TRO") and emergency hearing. For the reasons that follow, I shall deny the TRO and the request for a hearing.

In addition, I consider plaintiffs' response (ECF 10) to the Court's Show Cause Order regarding service (ECF 7). And, I shall grant plaintiffs one final opportunity to serve defendants.

## I. Procedural History

Plaintiffs filed suit in this Court on June 28, 2021, via a Complaint titled "$5.5 Million Dollar Civil Lawsuit for Non-Judicial Wrongful Foreclosure." ECF 1 (the "Complaint"). The Complaint is supported by one exhibit. ECF 1-2. Plaintiffs appear to be involved in foreclosure proceedings with defendants Mark Meyers and Diane Rosenberg and their law firm, Rosenberg & Associates, LLC, along with defendant "NationStar Mtg./Mr. cooper LLC."

The Complaint alleges various irregularities in the foreclosure process for plaintiffs' property, located on S. Beechfield Avenue in Baltimore. Plaintiffs assert lack of "standing;" lack

of "legal authority"; violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.; violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.; breach of contract; "failure to establish agency;" and more. *Id*. at 1-14. In addition to claims of "wrongful foreclosure," violation of the FDCPA, violation of TILA, and breach of contract, plaintiffs assert claims of "Violation of Federal Trust and Lien Laws;" "Slander of Title;" "Slander of Credit;" and "Infliction of Emotional Distress." *Id*. at 14. Plaintiffs ask the Court to "[v]acate the foreclosure process that is scheduled for August 23, 2019," and to award them $5.5 million in damages. *Id*. at 15.

Plaintiffs have since submitted a series of motions and other filings. In addition to the Motion at issue here (ECF 8), they have filed a "Jurisdictional Challenge" (ECF 2); a "Notice and Demand for Default" (ECF 3); and a "Motion to Moot All Pleadings Filed by the Attorneys' [sic] Until the Attorney's [sic] Prove Subject Matter Jurisdiction on the Court Record" (ECF 9). However, and of import here, the record does not reflect that plaintiffs have ever effectuated service of process upon defendants. And, defendants have never made any appearance in the case. *See* Docket.

By Order of August 16, 2021 (ECF 5), I noted that service had not been effected. And, plaintiffs are responsible for effecting service of process. *Id*. Therefore, I directed the Clerk to take all steps necessary to issue summons and to return summons to plaintiffs. *Id*. And, the Order explained how to effect service. *Id*. Summons were issued the same day. ECF 6.

In an Order of September 30, 2021 (ECF 7), I noted that plaintiffs had "failed to file anything further regarding service." Therefore, I granted plaintiffs 21 days from the date of the Order to show cause why service of process had not been effectuated, and forewarned plaintiffs

that failure to show cause would result in dismissal of the Complaint, without further notice and without prejudice. *Id*.

On October 7, 2021, plaintiffs submitted a "Response to Order to Show Cause." ECF 10. They explained that they had experienced "unforeseen extenuating Family Circumstances & misunderstanding," and requested an "extension or renewal of summons." *Id*. Despite this claim, however, they had managed to file ECF 8 and ECF 9 on September 30, 2021.

Plaintiffs' case appears to be related to a foreclosure proceeding in the Circuit Court for Baltimore County, in which the plaintiffs in this case are the defendants. *See Rosenberg, et al. v. Lee, et al.*, No. 03-C-17-008457 (Balt. Cty. Cir. Ct.).[1] The docket for the State case reflects that an Order to Docket Suit was filed on August 29, 2017. *Id*. A Trustee's Report of Sale was filed on March 5, 2019. *Id*. One of plaintiffs' exhibits indicates the foreclosure sale was scheduled for February 21, 2019 (ECF 8-1); plaintiffs assert it was postponed to August 23, 2019, due to the filing of "an emergency Chapter 7 bankruptcy" (ECF 1 at 10). Various exceptions, affidavits, and a motion to dismiss were filed in that case by Mr. and Ms. Lee, which appear to have been rejected. *See Rosenberg, et al. v. Lee, et al.* Docket. An "Order – Ratification Report of Sale" was issued on March 11, 2020. *Id*. And, a "Final Order Ratifying Auditor's Report" was issued on July 30, 2020. *Id*. Since then, the only activity in the foreclosure proceeding has been a series of "jurisdictional challenges" and similarly-titled filings submitted by plaintiffs in this case. *Id*.[2]

---

[1] *See* https://casesearch.courts.state.md.us/casesearch/. I may take judicial notice of matters of public record such as docket entries, pleadings, and papers in other cases. *See* Fed. R. Evid. 201.

[2] On October 1, 2021, in the Baltimore County foreclosure proceedings, plaintiffs here, who are defendants in the State case, filed a "Notice of Removal to U.S. District Court." *See Rosenberg, et al. v. Lee, et al.* Docket. Then, on October 8, 2021, plaintiffs filed a "Notice Of Removal to United States District Court" in this case. ECF 11. It appears to be an attempt to remove the Baltimore County foreclosure case to this Court, as part of this case. *Id*.

The Motion seeks an "Injunction and Restraining Order" "to cease and decease [sic] all foreclosure and eviction efforts until the title dispute pending in this court can be settled." ECF 8 at 1. The Motion repeats many of the arguments in the Complaint as to purported irregularities with the foreclosure process, including a supposed lack of legal authority by the attorney defendants, an allegedly missing promissory note, an undisclosed power of sale clause, and lack of consideration. *Id.* at 2-11. It also restates plaintiffs' claims for damages. In addition, the Motion alleges violations of "Federal Wire Fraud Laws," the FDCPA, and a "RICO action." *Id.* at 6-7, 11-12. And, plaintiffs claim that they will "suffer 'irreparable injury' if the judge doesn't stop the foreclosure immediately." *Id.* at 6. Therefore, plaintiffs seek the Court's intervention to "stop the eviction, vacate the foreclosure judgment, and any proceedings immediately pending the title dispute filed in court." *Id.* at 12.

## II. Request for TRO

To obtain a TRO, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The plaintiff must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009). As a TRO is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. In general, the same analysis governs both a motion for preliminary injunction and a request for temporary restraining order. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999).

To meet the first requirement, the plaintiffs must "clearly demonstrate that [they] will *likely succeed* on the merits," rather than present a mere "grave or serious question for litigation." *Real Truth About Obama, Inc.*, 575 F.3d at 346–47 (emphasis in the original). Simply "providing sufficient factual allegations to meet the [Fed. R. Civ. P.] 12(b)(6) standard of *Twombly* and *Iqbal*" does not meet the rigorous standard required for a TRO. *Allstate Ins. Co. v. Warns*, No. CCB-11-1846, 2012 WL 681792, at *14 (D. Md. Feb. 29, 2012).

To establish irreparable harm, the plaintiffs must show that they are suffering actual and imminent harm, not just a mere possibility, and that harm is truly irreparable and cannot be remedied at a later time with money damages. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). Irreparable harm "is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275,* 479 F.2d 1033, 1037 (2nd Cir. 1973)). When a TRO will "adversely affect a public interest . . . the court may . . . withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312–13 (1982). In fact, "courts . . . should pay particular regard for the public consequences in employing th[is] extraordinary remedy." *Id.* at 312.

In addition to the public interest determination, the balance of equities must tip in favor of the movants in order for a TRO to be granted. *Winter*, 555 U.S. at 20. Not only must courts weigh any potential harm to the nonmoving party, but also the chance of harm to any interested person, as well as any potential harm to the public. *Continental Group Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 356–57 (3d Cir. 1980).

In addition, Rule 65 of the Federal Rules of Civil Procedure provides that a court may issue a TRO without "written or oral notice to the adverse party" only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the pro se movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1); *see Sci. Sys. & Applications, Inc. v. United States*, PWG-14-2212, 2014 WL 3672908, at *3 (D. Md. July 22, 2014) ("Notice is not required for a TRO, but . . . the movant himself, in the case of a *pro se* party, must 'certif[y] in writing any efforts made to give notice and the reasons why it should not be required.'" (modifications in original) (quoting Fed. R. Civ. P. 65(b)(1)(B)). Where there is a failure to comply with the requirements of the rule, the motion for a TRO must be denied.

Plaintiffs certify in the Motion that they have mailed the Motion to all defendants, "certified return receipt via USPS." ECF 8 at 13. In addition, plaintiffs appended to the Motion an affidavit appearing to attest to the contents of the Motion. *See id*. at 14.

Even assuming that plaintiffs have satisfied the requirements of Rule 65, however, they have not established a likelihood of success on the merits. Nor are they likely to suffer irreparable harm in the absence of a TRO.

As noted, and as its title indicates, the Complaint alleges "wrongful foreclosure," as well as various violations of federal and state laws. ECF 1 at 15. The Motion restates many of these claims, as well as the Complaint's request for damages. ECF 8 at 7-12. The Motion also asks the Court to intervene and halt the Baltimore County foreclosure proceedings, "stop the eviction, [and] vacate the foreclosure judgment," "pending the title dispute filed in court." *Id*. at 12; *see id*. at 1.

However, to the extent plaintiffs seek to enjoin state court proceedings or seek declaratory relief regarding rights to the property at issue, this Court may not grant "an injunction to stay the proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Where the Anti-Injunction Act bars injunctive relief, issuance of a declaratory judgment that would have the same effect as an injunction is also unavailable. *See Samuels v. Mackell*, 401 U.S. 66, 73 (1971) (declaratory relief has virtually the same practical impact as a formal injunction). Additionally, where equitable relief is sought regarding property that is already the subject of an ongoing in rem action in another court, the court controlling the property for purposes of the earlier-filed suit has exclusive jurisdiction over the property. *See Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939) (the jurisdiction of the second court must yield to the court where the matter was first pending).

To be sure, plaintiffs have included a variety of claims in an apparent effort to invoke subject matter jurisdiction. But, in general, foreclosure challenges under state law do not give rise to federal question subject matter jurisdiction. *See McNeely v. Moab Tiara Cherokee Kituwah Nation Chief*, No. 3:08-cv-00293, 2008 WL 4166328, at *1 (W.D.N.C. Sept. 3, 2008) (nothing in "simple foreclosure action of real property . . . suggests the presence of a federal question"). To the extent plaintiffs believe the claims asserted constitute a viable defense to the foreclosure action, they could be raised in the context of that case.

Furthermore, the docket for the foreclosure proceeding in the Circuit Court for Baltimore County suggests that many of the issues raised by plaintiffs in this case were already raised as defenses in that proceeding. To the extent a State court has already resolved the matters now before this Court, the *Rooker-Feldman* doctrine may apply. The doctrine derives from two

Supreme Court cases: *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). It prohibits a federal district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Elyazidi v. SunTrust Bank*, 780 F.3d 227, 233 (4th Cir. 2015).

In other words, the *Rooker-Feldman* doctrine precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). Thus, "the doctrine forbids claims that 'seek [ ] redress for an injury caused by the state-court decision itself' because they 'ask[ ] the federal district court to conduct an appellate review of the state-court decision.'" *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006)) (alterations in *Adkins*); *accord Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003). The doctrine derives from 28 U.S.C. § 1257, a federal statute that vests the United States Supreme Court with jurisdiction to hear appeals from state court decisions in cases raising questions of federal law. *See Adkins*, 464 F.3d at 463-64.

A party to a state court proceeding, such as a foreclosure action, is able to raise objections in the state proceeding on the basis of applicable federal law or federal constitutional provisions. "'Under our system of dual sovereignty . . . state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'" *Bullock v. Napolitano*, 666 F.3d 281, 285 (4th Cir. 2012) (quoting *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990)) (emphasis omitted). Moreover, Maryland law provides for appellate review, in Maryland State courts, of adverse decisions of a Maryland circuit court. *See*

Md. Code (2020 Repl. Vol.), § 12-301 of the Courts & Judicial Proceedings Article. Thus, a plaintiff may not invoke this Court's federal question jurisdiction in order to relitigate a foreclosure action.

If the *Rooker-Feldman* doctrine applies, it would preclude this court from directly reviewing the judgment of a Maryland State court. In *Stillwell*, 336 F.3d at 319, the Court said: "[T]he *Rooker-Feldman* doctrine . . . preserves the independence of state courts as well as congressional intent that an appeal from a state court decision must proceed through that state's system of appellate review rather than inferior federal courts."

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005). Without jurisdiction, of course, plaintiff is not likely to succeed on the merits.

Even putting aside these jurisdictional concerns, plaintiffs have not demonstrated that they are likely to suffer irreparable harm in the absence of a TRO. "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, ____ U.S. ____, 138 S. Ct. 1942, 1944 (2018). The Motion makes conclusory assertions that irreparable injury will occur if the foreclosure proceeding is not halted, but provides no details as to any actual, ongoing, or impending harm requiring temporary relief. The Motion offers no explanation as to why it was filed about three months after the Complaint, and offers no information as to any forthcoming or imminent deadlines or proceedings, or what might have changed since the Complaint was filed. Moreover, the foreclosure sale was scheduled for August 2019, yet suit was not filed until June 28, 2021. ECF 1. Indeed, according to the docket in the State case, there has been little activity in the foreclosure proceeding since July 2020, save for the various jurisdictional challenges filed by plaintiffs in this case. *See Rosenberg, et al. v. Lee, et al.* Docket.

Plaintiffs have not established irreparable harm.

### III. Service of Process

I next address the issue of service of process. As noted, on October 7, 2021, plaintiffs responded (ECF 10) to the Court's show cause order of September 30, 2021 (ECF 7). They explained that service was delayed due to "unforeseen extenuating Family Circumstances & misunderstanding," and they requested an "extension or renewal of summons." *Id*. Plaintiffs' response included several completed Maryland State court forms labelled "Request for Summons/Summons Renewal." ECF 10-1 at 1-4. However, these summons are not the proper forms for this Court.

In ECF 5, I explained the matter of service of process. But, in light of plaintiffs' pro se status, they shall be provided a final opportunity to properly serve defendants. They are directed to present properly completed summons on Court-approved forms to the Clerk for issuance and to effect service on each of the named defendants in accordance with the appropriate rules of civil procedure. I will direct the Clerk to mail four blank summons forms to plaintiffs, so that plaintiffs may present properly completed summons to the Clerk for issuance. Once presented, the Clerk shall take all necessary steps to issue summons and to return summons to plaintiff.

Plaintiffs are again reminded that, pursuant to Fed. R. Civ. P. 4(c)(2), service of a summons and Complaint may be effected by any person who is not a party and who is at least 18 years of age. Further, plaintiffs are reminded that, under Fed. R. Civ. P. 4(l), the person effecting service of the summons and Complaint must promptly notify the Court, through an affidavit, that he or she has served defendants.[3]

---

[3] Plaintiffs may wish to hire a private process server to effectuate service. If plaintiffs do not use a private process server, and instead use certified mail, **restricted delivery**, **return receipt requested**, to make service, plaintiffs must file with the Clerk the United States Post Office

- 10 -

Maryland Rule 2-121(a) governs service of process on individuals. And, as to a corporate defendant, plaintiffs were previously advised that they may contact the Maryland Department of Assessments and Taxation at (410) 767-1330, or visit the website at https://egov.maryland.gov/BusinessExpress/EntitySearch, to obtain the name and a service address for the resident agent of a corporate defendant. Both LexisNexis and Westlaw provide free public access to the Maryland Rules.

Within 21 days of the docketing of this Order, plaintiffs shall present to the Clerk properly completed summons, on Court-approved forms provided by the Clerk, as directed herein. Thereafter, plaintiffs shall properly effect service on each of the named defendants, and plaintiffs must do so within 21 days of summons being issued by the Clerk. Plaintiffs are forewarned that failure to properly effect service will result in dismissal of the Complaint, without further notice, and without prejudice.

### IV. Conclusion

For the foregoing reasons, I will deny the Motion, without prejudice, insofar as it requests a TRO and an emergency hearing. I make no ruling on the Complaint or any of the other aspects of the Motion. And, plaintiffs must properly effect service on each of the named defendants within 21 days of summons being issued.

An Order follows.

Date: October 14, 2021

                                               /s/
                                           Ellen L. Hollander
                                           United States District Judge

---

acknowledgment as proof of service. Plaintiffs must take care to send the summons and complaint by **restricted delivery**.